1  DANIEL CASILLAS, ESQ., SBN 110298
   Attorney at Law
2  101 West Broadway, Suite 1950
   San Diego, California 92101
3  Tel: (619) 237-3777
   Fax: (619) 238-9914
4  Email: dcesq1@sbcglobal.net

5  Attorney for Defendant

6

7

8                    **UNITED STATES DISTRICT COURT**

9                    **SOUTHERN DISTRICT OF CALIFORNIA**

10                   **(HONORABLE WILLIAM Q. HAYES)**

11 | UNITED STATES OF AMERICA,        | Criminal Case No. 07CR3021-WQH
12 |                         Plaintiff, |
13 | vs.                              | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTIONS**
14 | PEDRO CRUZ-TERCERO,              |
15 |                         Defendant. |
16

17                                  **I**

18                 **MOTION TO DISMISS INDICTMENT**

19          **FOR FAILURE TO ALLEGE ESSENTIAL ELEMENTS**

20  **A.   Introduction**

21         The indictment must be dismissed because the government has failed to properly allege all

22  elements of the offense. The Fifth Amendment requires that "[n]o person shall be held to answer for

23  a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury . . .."

24  Consistent with this Constitutional requirement, the Supreme Court has held that an indictment must

25  "<u>fully, directly, and expressly, without any uncertainty or ambiguity</u>, set forth all the elements

26  necessary to constitute the offense intended to be punished." United States v. Carll, 105 U.S. 611,

27  612-13 (1881) (emphasis added). It is black letter law that an indictment that does not allege an

28  element of an offense, even an implied element, is defective, and should be dismissed. See e.g.,

1  Russell v. United States, 369 U.S. 749, 769-72 (1962); Stirone v. United States, 361 U.S. 212, 218-
2  19 (1960); United States v. Du Bo, 186 F.3d 1177, 1179 (9th Cir. 1999); United States v. Keith,
3  605F.2d 462, 464 (9th Cir. 1979).

4        First, the indictment fails to allege the following elements necessary to convict Mr. Cruz-
5  Tercero of the offense: that Mr. Cruz-Tercero knew he was in the United States, he failed to undergo
6  inspection and admission by an immigration officer at the nearest inspection point, and that he
7  voluntarily entered the United States.  As a consequence, it must be dismissed.  See e.g., Nyrienda v.
8  I.N.S., 279 F.3d 620 (8th Cir. 2002) (setting forth the components of an entry under the immigration
9  law); see also United States v. Pernillo-Fuentes, 252 F.3d 1030 (9th Cir. 2001); United States v. Du
10  Bo, 186 F.3d 1177, 1179 (9th Cir. 1999).[1]

11        Second, the indictment charges a violation of Title 8, United States Code, Sections 1326(a)
12  and (b). In United States v. Salazar-Lopez, __ F.3d __, 2007 WL 3085906 at *2 (9th Cir. Oct. 24,
13  2007), the Ninth Circuit indicated that to be sufficient, an indictment charging a violation of section
14  1326(b) must allege either that the defendant has been previously removed subsequent to a
15  conviction (*i.e.,* for a misdemeanor, a felony, an aggravated felony, or a crime of violence), or it
16  must allege a specific date of the prior removal. In this case, the indictment only alleges that Mr.
17  Cruz-Tercero "was removed from the United States subsequent to October 15, 2001." The
18  indictment does not allege either that this removal occurred subsequent to a conviction or allege a
19  specific date of the prior removal. Therefore, because the indictment does not allege all elements of
20  section 1326(b), the indictment must be dismissed.

21        Last, the indictment, although purportedly alleging a violation of sub-section (b) of section
22  1326, does not allege that Mr. Cruz-Tercero has suffered a prior conviction.

23  **B.  Failure to allege knowledge**

24        Being "found in" the United States after deportation is a general intent crime. This means
25  that the government must prove the defendant knew "the facts that make his actions illegal, but not

---

[1] Most of these issues were decided against Mr. Cruz-Tercero in United States v. Rivera-Sillas, 376 F.3d 887 (9th Cir. 2004). However, these issues remain open in the Supreme Court. To preserve these issues for further review, Mr. Cruz-Tercero incorporates the arguments made by the defendant in Rivera-Sillas.

1  that the action itself is illegal." United States v. Salazar-Gonzalez, 458 F.3d 851, 855 (9th Cir.
2  2006). Both the Supreme Court and the Ninth Circuit have made clear that the intent general
3  knowledge requirement extends to both the proscribed act (*i.e.*, entering and remaining in the United
4  States) and the facts that make the act illegal (being an alien). C.f. Staples v. United States, 511 U.S.
5  600 (1994) (holding that a federal firearms statute requires proof that the defendant knowingly
6  possessed a firearm and that he knew the weapon he possessed had characteristics bringing it within
7  the scope of the statute.); United States v. Lynch, 233 F.3d 1139 (9th Cir. 2000)(Provision of
8  Archeological Resources Protection Act imposing criminal liability for removing archeological
9  resources from government land requires that defendant knew that item intentionally removed was
10 "archeological resource.").

11      The Ninth Circuit recently reiterated that 8 U.S.C. §1326 requires that the defendant know
12 the essential facts making his presence in the United States illegal.  In Salazar Gonzalez, 458 F.3d at
13 858, the panel held that the district court erred when it failed to instruct the jury that the defendant
14 could not be convicted unless the government proved he knew he was in the United States. Id. at
15 858. Because "knowledge" was an essential element of the offense of being "found in" the United
16 States after deportation, id. at 857, the defendant was entitled to a knowledge instruction, even
17 without presenting any evidence himself.

18      The Ninth Circuit's reasoning is even more compelling when applied to the defendant's
19 knowledge of his alienage. Because alienage is *the* fact that makes Mr. Cruz-Tercero's remaining in
20 the United States illegal, he must know that fact to be guilty of the general intent crime charged.
21 This is true even though he need not have had the specific purpose to violate U.S. immigration laws.
22 As an essential element of the crime, knowledge of alienage must be specifically alleged in the in
23 the indictment. Because the indictment here alleges no *mens rea* at all, to assure that all facts
24 necessary to convict him were"presented to...the grand jury that indicted him," the charges against
25 Mr. Cruz-Tercero must be dismissed.

26      The Ninth Circuit's decision in Rivera-Sillas, is not to the contrary. In that case, the Ninth
27 Circuit rejected the argument that the district court erred by refusing to dismiss an indictment
28 because it that did not allege the defendant knew he was in the United States. 367 F.3d at 1090.

1  Emphasizing that § 1326 is not a strict liability offense, the Ninth Circuit nonetheless held that
2  "alleging a defendant is a deported alien who is subsequently found in the United States without
3  permission suffices to allege general intent" because a person physically present in the United States
4  may be presumed to have acted to enter in this country. Id. (Internal citations omitted). Accordingly,
5  the grand jury could infer, and give its approval to, the *mens rea* requirements that the defendant
6  knew he was in the United States and entered voluntarily.

7  Importantly, Rivera Sillas did not address whether the indictment must allege a defendant's
8  knowledge of his alienage. Moreover, while the allegation that the defendant is a "deported alien
9  who is subsequently found in the United States without permission" gives rise to an inference that
10 the defendant knew he was in the United States and voluntarily entered, the same language does not
11 lead to an inference that the defendant knew he was a non-citizen. The fact of an defendant's
12 removal does not establish his alienage, much less his knowledge of alienage.[2] E.g. United States v.
13 Ortiz-Lopez, 24 F.3d 53, 56 (9th Cir. 1994) (quote). Indeed, a defendant's alienage is never really
14 evaluated in many–if not most–removal proceedings, either because the respondent is unrepresented
15 and unable to evaluate his citizenship, does not want to remain in custody while contesting the
16 allegations in the order to show cause, has agreed to removal as part of a plea agreement entered into
17 with insufficient information, or does not yet know the facts that make him a United States citizen.
18 Accordingly, unless the government presents some evidence to the grand jury in addition to the fact
19 of a removal–evidence that may, but need not, come from the removal proceeding–the grand jury
20 has no way to evaluate the defendant's knowledge of his own alienage.[3]

21 **C.    Failure to allege date of deportation, or its temporal relationship to a removal**

22 Mr. Cruz-Tercero has a Fifth Amendment right to have a grand jury pass upon those facts
23 necessary to convict him at trial. In the indictment, the government included the language: "It is

---

[2] Indeed, an Immigration Judge does not adjudicate alienage, though he may terminate proceedings based on evidence of citizenship.

[3] The facts of United States v. Staples illustrate the limits of the presumptions relied upon in Rivera-Sillas. To date, no court has read Staples to permit a presumption that a defendant knew the particular characteristics bringing the firearm within the scope of the statute simply because he possessed it.

further alleged that defendant Pedro Cruz-Tercero was removed from the United States subsequent to October 15, 2001."[4] The indictment in this case violates Mr. Cruz-Tercero's right to presentment in two ways. First, the language added by the government does not ensure that the grand jury actually found probable cause that Mr. Cruz-Tercero was deported after October 15, 2001, as opposed to simply being physically removed from the United States. Second, that the grand jury found probable cause to believe that Mr. Cruz-Tercero was removed "subsequent to October 15, 2001" does not address the possibility that the government may at trial rely on a deportation that was never presented to, or considered by, the grand jury.

The Fifth Amendment provides that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury." U.S. Const. Amend. V. The Sixth Amendment provides that "[i]n all criminal prosecutions the accused shall enjoy the right . . . to be informed of the nature and cause of the accusation . . .." U.S. Const. Amend. VI. Thus, a defendant has a constitutional right to have the charges against him presented to a grand jury and to be informed of the grand jury's findings via indictment. See Russell, 369 U.S. at 763 (An indictment must "contain[] the elements of the offense intended to be charged, and sufficiently apprise[] the defendant of what he must be prepared to meet.").

To be sufficient, an indictment must allege every element of the charged offense. See United States v. Morrison, 536 F.2d 286, 287 (9th Cir. 1976) (citing United States v. Debrow, 346 U.S. 374 (1953)). Indeed, in order to be sufficient, an indictment must include implied elements not present in the statutory language. See Du Bo, 186 F.3d at 1179. "If an element is necessary to convict, it is also necessary to indict, because elements of a crime do not change as criminal proceedings progress." United States v. Hill, 279 F.3d 731, 741 (9th Cir. 2002). An indictment's failure to "recite an essential element of the charged offense is not a minor or technical flaw . . . but a fatal flaw requiring dismissal of the indictment." Du Bo, 186 F.3d at 1179.

In the indictment, the government here has added the language: "It is further alleged that

---

[4] Presumably, the government added this language in an attempt to comply with the Ninth Circuit's decision in United States v. Covian-Sandoval, 462 F.3d 1090 (9th Cir. 2006). This language, however, does not cure the problems with this indictment.

defendant Pedro Cruz-Tercero was removed from the United States subsequent toOctober 15, 2001." There is no indication from this "allegation" that the grand jury was charged with the legal meaning of the word "removal" applicable in this context, as opposed to being simply removed from the United States in a colloquial sense. It is clear from Covian-Sandoval that in order to trigger the enhanced statutory maximum contained in section 1326(b), the government must prove that a person was removed—as that term is used in the immigration context—after having suffered a conviction. 462 F.3d at 1097-1098 (noting as part of its analysis that immigration proceedings have fewer procedural protections that criminal proceedings). A deportation has the following elements: "(1) that a deportation proceeding occurred as to [the] defendant and as a result, [(2)] a warrant of deportation was issued and [(3)] executed by the removal of the defendant from the United States." See United States v. Castillo-Basa, 483 F.3d 890 (9th Cir. 2007) (citing, without contesting, the elements of a deportation provided by the district court.) As this is the type of removal the government must prove before a petite jury, it is necessary that the government allege such a removal before the grand jury. As returned, however, there is no assurance from the face of the indictment that the grand jury in this case was charged with the type of removal necessary to increase a person's statutory maximum under section 1326(b).

As such, there is no fair assurance that the grand jury will have passed upon those facts necessary to convict Mr. Cruz-Tercero. Additionally, as charged, there is no fair assurance that the indictment will contain those allegations the government will attempt to prove at trial. If the government alleged before the grand jury that Mr. Cruz-Tercero was removed (in a colloquial sense), but offers proof at trial that Mr. Cruz-Tercero was removed (in an immigration sense), there will be a constructive amendment of the indictment at trial. See Stirone v. United States, 361 U.S. 212, 217-19 (1960). Either scenario represents a violation of Mr. Cruz-Tercero's right to presentment. Stirone, 361 U.S. at 218-19.

A second problem with the indictment is that there is no indication which (if any) deportation the government presented to the grand jury. In most cases, the government will have a choice of deportations to present to the grand jury to support an allegation that a person had been deported after a specific date. According to information provided by the government, although not conceded

1  by the defendant, Mr. Cruz-Tercero has been deported on several occasions. This renders it a very
2  real possibility that the government alleged one deportation to the grand jury to sustain its allegation
3  that Mr. Cruz-Tercero was removed from the United States, but will attempt to prove at trial a
4  wholly different deportation to sustain its trial proof. If this were to turn out to be the case, Mr.
5  Cruz-Tercero's right to have the grand jury pass on all facts necessary to convict him would be
6  violated. See Du Bo, 186 F.3d 1179.

**D.      Failure to allege a prior conviction**

Although purportedly alleging a violation of sub-section (b) of section 1326, the indictment here does not allege that Mr. Cruz-Tercero has suffered a prior conviction. Mr. Cruz-Tercero moves to dismiss the indictment on this basis. Mr. Cruz-Tercero recognizes that Ninth Circuit law is contrary to his position. See Covian-Sandoval, 462 F.3d at 1096-98. He nonetheless raises the issue to preserve his requested remedy—dismissal based on structural error. See United States v. Salazar-Lopez, No. 06-50438, __ F.3d __ (9th Cir. Oct. 24, 2007), available as 2007 U.S. App. Lexis 24788 *1, *8-*14.

## II

## ANY STATEMENTS MADE BY MR. CRUZ-TERCERO SHOULD BE SUPPRESSED

**A.      The Government Must Demonstrate Compliance With *Miranda*.**

The discovery reports indicate that Mr. Cruz-Tercero was interrogated while in custody. Subsequently, Mr. Cruz-Tercero allegedly made incriminating statements.

**1.      *Miranda* Warnings Must Precede Custodial Interrogation.**

The Supreme Court has held that the prosecution may not use statements, whether exculpatory or inculpatory, stemming from a custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. See Miranda v. Arizona, 384 U.S. 436, 444 (1966). The law imposes no substantive duty upon the defendant to make any showing other than that the statement was taken from the defendant during custodial interrogation. Id. at 476. Custodial interrogation is questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his

freedom of action in any significant way. Id. at 477; see Orozco v. Texas, 394 U.S. 324, 327 (1969). In Stansbury v. California, the Supreme Court clarified its prior decisions by stating that "the initial determination of custody depends on the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned." 511 U.S. 318, 323 (1994). The Ninth Circuit has held that a suspect will be found to be in custody if the actions of the interrogating officers and the surrounding circumstances, fairly construed, would reasonably have led him to believe he could not freely leave. See United States v. Lee, 699 F.2d 466, 468 (9th Cir. 1982); United States v. Bekowies, 432 F.2d 8, 12 (9th Cir. 1970). In determining whether a person is in custody, a reviewing court must consider the language used to summon the defendant, the physical surroundings of the interrogation, and the extent to which the defendant is confronted with evidence of his guilt. See United States v. Estrada-Lucas, 651 F.2d 1261 (9th Cir. 1980).

Once a person is in custody, Miranda warnings must be given prior to any interrogation. In United States v. Leasure, the Ninth Circuit held that "custody," for the purposes of Miranda warnings, usually begin at the point of secondary inspection in border cases. 122 F.3d 837, 840 (1997).

Mr. Cruz-Tercero was referred from primary to secondary inspection because the officer at primary believed he was lying when he claimed he was a United States citizen. At secondary inspection, he was questioned concerning his identity and citizenship, and in response to those questions, admitted his true name, that he was a Mexican citizen, and that he had no legal right to be in the United States. Given the context in which this interview occurred, at the border where he was being held because it was believed he had committed a crime in giving a false claim to United States citizenship, Mr. Cruz-Tercero was being asked questions that would elicit an incriminating response. He therefore should have been given Miranda warnings prior to any questioning. United States v. Mata-Abundiz, 717 F.2d 1277, 1280 (9th Cir. 1983).

Mr. Cruz-Tercero's subsequent actions make it clear he did not intend to waive his Miranda rights. He first refused to sign a waiver of those rights about six hours after he

was in custody, and invoked about nine hours later. The tactics used in this case are similar to the question first, <u>Mirandize</u> later interrogation technique recently held to violate the Fifth amendment by the United States Supreme Court in <u>Missouri v. Seibert</u>, _U.S._, 124 S.Ct. 2601 (2004). His statement at secondary inspection should therefore be suppressed.[5]

<u>Miranda</u> warnings must advise the defendant of each of his or her "critical" rights. <u>See</u> <u>United States v. Bland</u>, 908 F.2d 471, 474 (9th Cir. 1990). Furthermore, if a defendant indicates that he wishes to remain silent or requests counsel, the interrogation must cease. <u>See</u> <u>Miranda</u>, 384 U.S. at 474; <u>see also</u> <u>Edwards v. Arizona</u>, 451 U.S. 477 (1981).

**2.     The Government Must Demonstrate That Mr. Cruz-Tercero's Alleged Waiver Was Voluntary, Knowing, and Intelligent.**

For a defendant's inculpatory statements to be admitted into evidence, the defendant's "waiver of Miranda rights [during custodial interrogation] must be voluntary, knowing and intelligent." <u>United States v. Binder</u>, 769 F.2d 595, 599 (9th Cir. 1985) (citing <u>Miranda</u> 384 U.S. at 479); <u>see also</u> <u>United States v. Vallejo</u>, 237 F.3d 1008, 1014 (9th Cir. 2001); <u>Schneckloth v. Bustamonte</u>, 412 U.S. 218 (1973). When interrogation continues in the absence of an attorney, and a statement is taken, a heavy burden rests on the government to demonstrate that the defendant intelligently and voluntarily waived his privilege against self-incrimination and his right to retained or appointed counsel. <u>See</u> <u>Miranda</u>, 384 U.S. at 475. The Ninth Circuit has held, "[t]here is a presumption against waiver." <u>Garibay</u>, 143 F.3d 534, 536-37 (1998) (citing <u>United States v. Bernard S.</u>, 795 F.2d 749, 752 (9th Cir. 1986)) (other internal citations omitted); <u>see also</u> <u>United States v. Heldt</u>, 745 F.2d 1275, 1277 (9th Cir. 1984) (stating that the court must indulge every reasonable presumption against waiver of fundamental constitutional rights) (citing <u>Johnson v. Zerbst</u>, 304 U.S. 458, 464 (1938)).

The validity of the waiver depends upon the particular facts and circumstances surrounding

---

[5] It is anticipated that the prosecution will argue that no hearing is necessary in this matter, because the defense has not filed any declarations as required by Local Criminal Rule 47.1(g). Similar rules have been upheld in the context of motions to suppress evidence only, but the Ninth Circuit has specifically held such a rule may not be used to preclude an evidentiary hearing where the basis for suppression is a violation of the fifth, not the fourth, amendment. <u>United States v. Batiste</u>, 868 F.2d 1089, 1092, fn5 (9th Cir. 1988).

1  the case, including the background, experience, and conduct of the accused. See Edwards, 451 U.S.
2  at 482; Zerbst, 304 U.S. at 464; see also Garibay, 143 F.3d at 536; see also Bernard S., 795 F.2d at
3  751 (stating that "[a] valid waiver of Miranda rights depends upon the totality of the circumstances,
4  including the background, experience and conduct of the accused"). A determination of the
5  voluntary nature of a waiver "is equivalent to the voluntariness inquiry [under] the [Fifth]
6  Amendment." Derrick v. Peterson, 924 F.2d 813, 820 (9th Cir. 1990).

7  A determination of whether a waiver is knowing and intelligent, on the other hand, requires a
8  reviewing court to discern whether "the waiver [was] made with a full awareness both of the nature
9  of the right being abandoned and the consequences of the decision to abandon it." Id.; see also
10 United States v. Amano, 229 F.3d 801, 805 (9th Cir. 2000); Garibay, 143 F.3d at 436. This inquiry
11 requires that a court determine whether "the requisite level of comprehension" existed before the
12 purported waiver may be upheld. Derrick, 924 F.2d at 820. Thus, "[o]nly if the `totality of the
13 circumstances surrounding the interrogation' reveal both an uncoerced choice and the requisite level
14 of comprehension may a court properly conclude that the Miranda rights have been waived." Id.
15 (quoting Burbine, 475 U.S. at 521) (emphasis in original) (other internal citations omitted).

16 Unless and until Miranda warnings and a knowing and intelligent waiver are demonstrated
17 by the prosecution, no evidence obtained as result of the interrogation can be used against the
18 defendant. See Miranda, 384 U.S. at 479.

19 **B.    Mr. Cruz-Tercero's Statements Were Involuntary.**

20 Even when the procedural safeguards of Miranda have been satisfied, a defendant in a
21 criminal case is deprived of due process of law if his conviction is founded upon an involuntary
22 confession. See Arizona v. Fulminante, 499 U.S. 279 (1991); Jackson v. Denno, 378 U.S. 368, 387
23 (1964). The government bears the burden of proving that a confession is voluntary by a
24 preponderance of the evidence. See Lego v. Twomey, 404 U.S. 477, 483 (1972).

25 A voluntary statement must be the product of a rational intellect and free will. See
26 Blackburn v. Alabama, 361 U.S. 199, 208 (1960). In determining the voluntariness of a confession,
27 the Ninth Circuit has required consideration of "whether, under the totality of the circumstances, the
28 challenged confession was obtained in a manner compatible with the requirements of the

1  Constitution." United States v. Bautista-Avila, 6 F.3d 1360, 1364 (9th Cir. 1993); see also
2  Bustamonte, 412 U.S. at 226. Factors a reviewing court should consider when determining
3  voluntariness include the youth of the accused, lack of education, low intelligence, the absence of
4  any advice regarding the accused's constitutional rights, the length of the detention, the repeated and
5  prolonged nature of the questioning, and the use of physical punishment, such as the deprivation of
6  food or sleep, to determine if law enforcement officers elicited a voluntary confession. See
7  Bustamonte, 412 U.S. at 226.

8       In general, a statement is considered involuntary if it is "extracted by any sort of threats or
9  violence, [or] obtained by any direct or implied promises, however slight, [or] by the exertion of any
10 improper influence." Hutto v. Ross, 429 U.S. 28, 30 (1976) (per curiam) (quoting Bram v. United
11 States, 168 U.S. 532, 542-43 (1897)); see also United States v. Tingle, 658 F.2d 1332, 1335 (9th Cir.
12 1981) (agent's express statement that defendant would not see her child "for a while" and warning
13 that she had "a lot at stake", referring specifically to her child, were patently coercive and
14 defendant's resultant confession held involuntary).

15 **C.     This Court Should Conduct An Evidentiary Hearing.**

16      This Court must conduct an evidentiary hearing to determine whether Mr. Cruz-Tercero'
17 statements should be admitted into evidence. Under 18 U.S.C. § 3501(a), this Court is required to
18 determine, outside the presence of the jury, whether any statements made by Mr. Cruz-Tercero are
19 voluntary. In addition, 18 U.S.C. § 3501(b) requires this Court to consider various enumerated
20 factors, including Mr. Cruz-Tercero' understanding of his rights and of the charges against him.
21 Without the presentation of evidence, this Court cannot adequately consider these statutorily
22 mandated factors.

23      Moreover, § 3501(a) requires this Court to make a factual determination. If a factual
24 determination is required, courts must make factual findings by Fed. R. Crim. P. 12. See United
25 States v. Prieto-Villa, 910 F.2d 601, 606-10 (9th Cir. 1990). Since "'suppression hearings are often
26 as important as the trial itself,'" id. at 609-10 (quoting Waller v. Georgia, 467 U.S. 39, 46 (1984)),
27 these findings should be supported by evidence, not merely an unsubstantiated recitation of
28 purported evidence in a prosecutor's responsive pleading.

### III
### CONCLUSION

For the foregoing reasons, it is respectfully requested that this court grant the motions stated herein.

Dated: January 28, 2008                                 Respectfully submitted,


 *s/DANIEL CASILLAS*
DANIEL CASILLAS
Attorney for Defendant
PEDRO CRUZ-TERCERO

1  DANIEL CASILLAS, ESQ., SBN 110298
   Attorney at Law
2  101 West Broadway, Suite 1950
   San Diego, CA 92101
3  Tel: (619) 237-3777
   Fax: (619) 238-9914
4  Email: dcesq1@sbcglobal.net

5  Attorney for Defendant

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA,    | Criminal Case No. 07CR3021-WQH |
|---|---|
| Plaintiff, | **CERTIFICATE OF SERVICE** |
| vs. | |
| PEDRO CRUZ-TERCERO, | |
| Defendant. | |

I, the undersigned, declare: That I am over eighteen years of age, a resident the County of San Diego, State of California, and I am not a party in the within action; That my business address is: 101 West Broadway, Suite 1950, San Diego, CA 92101.

That I caused to be served the within **NOTICE OF MOTIONS AND MOTIONS TO DISMISS INDICTMENT FOR FAILURE TO ALLEGE ESSENTIAL ELEMENTS; and TO SUPPRESS STATEMENTS**, on the Untied States Attorney's Office, by electronically filing the document with the Clerk of the United States District Court for the Southern District of California, 880 Front Street, San Diego, California 92101, using its ECF System, which electronically notifies them.

I certify that the foregoing is true and correct. Executed on January 28, 2008, at San Diego, California.

                                              *s/DANIEL CASILLAS*
                                              DANIEL CASILLAS
                                              Attorney for Defendant