KAREN P. HEWITT
United States Attorney
CHRISTOPHER P. TENORIO
Assistant U.S. Attorney
California State Bar No. 166022
880 Front Street, Suite 6293
San Diego, California  92101-8893
Telephone: (619) 557-7843
Christopher.Tenorio@usdoj.gov

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Criminal Case No.  07CR3021-WQH |
| | ) | |
| Plaintiff, | ) | DATE:      February 4, 2008 |
| | ) | TIME:      2:00 p.m. |
| v. | ) | |
| | ) | GOVERNMENT'S RESPONSE IN |
| PEDRO CRUZ-TERCERO, | ) | OPPOSITION TO DEFENDANT'S |
| | ) | MOTIONS: |
| Defendant. | ) | |
| | ) | 1)    COMPEL DISCOVERY; |
| | ) | 2)    FILE FURTHER MOTIONS; |
| | ) | 3)    DISMISS INDICTMENT FOR |
| | ) | FAILURE TO ALLEGE ESSENTIAL |
| | ) | ELEMENTS; |
| | ) | 4)    SUPPRESS STATEMENTS; |
| | ) | |
| | ) | TOGETHER WITH STATEMENT OF FACTS |
| | ) | AND MEMORANDUM OF POINTS AND |
| | ) | AUTHORITIES |
| | ) | |

COMES NOW the plaintiff, UNITED STATES OF AMERICA, by and through

its counsel, Karen P. Hewitt, United States Attorney, and Christopher

P. Tenorio, Assistant United States Attorney, and hereby files its

response and opposition to Defendant's above-referenced motions.  Said

response is based upon the files and records of the case, together

with the attached Statement of Facts and Memorandum of Points and

Authorities.

//

# I.

## STATEMENT OF FACTS

### A.    PRESENT OFFENSE

On October 16, 2007, at approximately 3:45 a.m., Border Patrol Agents Jason Wardlow and Daniel Alvarado encountered Defendant Pedro Cruz-Tercero driving a white 1995 Ford Econoline van on Highway 76. The agents knew that the area where Defendant was driving is a route commonly used by alien smugglers to circumvent the I-15 Border Patrol checkpoint.  The van sped up as it passed the agents.  The agents lost sight of the van for approximately 30 minutes, but later found it parked with its doors open.  After 10 minutes, the agents responded to sounds in nearby brush and located Defendant.

Agent Wardlow identified himself as a Border Patrol Agent. Pursuant to an immigration inspection, Defendant stated that he was the driver of the van and that he was a Mexican citizen with no immigration documents to permit him to be or remain in the United States.   The agents arrested Defendant and transported him to the Murrieta Border Patrol Station.

At the station, at approximately 5:45 a.m., Agent Alvarado advised Defendant of his Miranda rights, which Agent Wardlow witnessed.  At 7:45 a.m., Defendant made a video-taped statement in which he admitted his prior convictions and that had not applied for readmission into the United States.

Defendant was subsequently indicted on November 7, 2007 for Deported Alien Found in the United States, in violation of Title 8, United States Code, Section 1326(a) and (b).

//

//

B.   **PRIOR HISTORY**

1.   **Criminal History**

Defendant's prior criminal convictions include the following. On January 21, 2000, Defendant was convicted on of Assault of a Person with a Semi-automatic Firearm (felony), in violation of California Penal Code § 245(B), in the Superior Court of San Diego County. Defendant was sentenced to three years probation and 270 days in jail. Defendant's probation was revoked on October 18, 2001, and he was sentenced to six years of prison.

On October 15, 2001, Defendant was convicted of Possession of a Controlled Substance, in violation of California Health and Safety Code § 11377(A), in the Superior Court of San Diego County. Defendant was sentenced to four years in prison.

2.   **Immigration History**

Defendant was previously ordered deported on March 12, 2001. Defendant was most recently deported on February 16, 2005 through Calexico, California.

**II.**

**POINTS AND AUTHORITIES**

A.   **THE GOVERNMENT WILL PROVIDE DISCOVERY AS PROVIDED HEREIN**

Except as described below, the Court should deny Defendant's discovery requests.

1.   **Rule 16(a)(1)(A): Defendant's Statements.**

The Government has disclosed all known written and statements of the Defendant and the substance of oral statements made by the Defendant in response to questions by government agents in this case.

//

## 2.    Documents, Arrest Reports, and Tangible Evidence.

In accordance with obligations under Rule 16(a)(1)(C) and 16(c), the Government will permit the Defendant to inspect and copy or photograph all books, papers, documents, photographs, tangible objects, buildings, or places, or portions thereof, which are within or may come within the possession, custody, or control of the Government, and which are material to the preparation of the Defendant's defense or are intended for use by the Government as evidence-in-chief at trial or were obtained from or belong to the Defendant.

## 3.    Rule 16, and Brady: For Exculpatory Evidence.

The Government is well aware of, and will fully perform, its duty under, Brady v. Maryland, 373 U.S. 83 (1963), and United States v. Agurs, 427 U.S. 97 (1976). Accordingly, the Government will disclose exculpatory evidence within its possession that is material to the issue of guilt. Defendant is not entitled to all evidence known or believed to exist which is, or may be, favorable to the accused, or which pertains to the credibility of the Government's case. As the Ninth Circuit Court of Appeals stated in United States v. Gardner, 611 F.2d 770 (9th Cir. 1980):

> [T]he prosecution does not have a constitutional duty to disclose every bit of information that might affect the jury's decision; it need only disclose information favorable to the defense that meets the appropriate standard of materiality.

Id. at 774-75 (citations omitted). See also United States v. Sukumolachan, 610 F.2d 685, 687 (9th Cir. 1980) (the Government is not required to create non-existent exculpatory material); United States v. Flores, 540 F.2d 432, 438 (9th Cir. 1976) (Brady does not create any pretrial discovery privileges not contained in the

1  Federal Rules of Criminal Procedure).

2  **4.  Rule 16, and Brady: For Sentencing.**

3       The Government is also well aware of, and will fully perform,

4  its duty under Brady v. Maryland, 373 U.S. 83 (1963) and United

5  States v. Agurs, 427 U.S. 97 (1976) regarding evidence pertaining

6  to punishment.  Accordingly, and consistent with its position

7  stated above, the Government will disclose exculpatory evidence

8  within its possession that is material to the issue of punishment.

9  **5.  Rule 16(a)(1)(A), (B), and (C): Prior Record**

10       The Government has already provided Defendant with arrest

11  reports, judgment and conviction documents for prior offenses and

12  other evidence of prior bad acts pursuant to Rules 16(a)(1)(A), (B)

13  and (C).

14  **6.  Rule 16(a)(1)(C) and Fed. R. Evid. 404(b): Prior**
    **Arrests, Convictions Or Bad Acts.**

15

16       The Government reserves the right to introduce such prior bad

17  acts, and will address such evidence and its intentions in motions in

18  limine to be filed separately according to the Court's scheduling

19  orders.

20  **7.  Rule 16(a)(1)(C): Evidence Seized.**

21       In accordance with obligations under Rule 16(a)(1)(C) and 16(c),

22  the Government will permit the Defendant to inspect and copy or

23  photograph all books, papers, documents, photographs, tangible

24  objects, buildings, or places, or portions thereof, which are within

25  or may come within the possession, custody, or control of the

26  Government, and which are material to the preparation of the

27  Defendant's defense or are intended for use by the Government as

28  evidence-in-chief at trial or were obtained from or belong to the

1 Defendant.

2         **8.**   *Henthorn* **Material**

3     Pursuant to <u>United States v. Henthorn</u>, 831 F.2d 29, 30 (9th Cir.

4 1991), the Government will comply with its responsibilities to review

5 the personnel files of its agents who may serve as witnesses; and the

6 Government will disclose any impeachment information regarding

7 criminal investigations. The Government is presently unaware of any

8 criminal involvement by any prospective government witness, or that

9 any prospective government witness is under investigation. The

10 Government objects to Defendant's request that the Assistant United

11 States Attorney personally review all personnel files of prospective

12 witnesses.

13         **9.**   **Expert Witnesses.**

14     The Government will meet obligations pursuant to Fed. R. Crim.

15 P. 16(a)(1)(E) to disclose information regarding expert witnesses.

16 The Government anticipates presenting testimony of a fingerprint

17 examination expert witness who will identify Defendant's fingerprints

18 on documents from his A-file. The Government will produce details

19 regarding the nature of the expert's testimony, and the qualifications

20 of the expert when a trial date is scheduled and any expert is

21 obtained.

22         **10.**   **Impeachment Evidence.**

23     The Government is unaware of any impeachment evidence of a

24 prospective government witness is biased or prejudiced against

25 Defendant. The Government is aware of, and will comply with, its

26 obligations regarding impeachment evidence pursuant to <u>Brady v.</u>

27 <u>Maryland</u>, 373 U.S. 83 (1963), and <u>United States v. Agurs</u>, 427 U.S. 97

28 (1976).

1   **11.  <u>Evidence of Criminal Investigations of Witnesses.</u>**

2        The Government is currently unaware of any pending criminal

3   investigations against a prospective government witness is biased or

4   prejudiced against Defendant.  The Government will comply with its

5   obligations under <u>Brady v. Maryland</u>, 373 U.S. 83 (1963) and provide

6   such evidence if and when it becomes known.

7   **12.  <u>Evidence of Bias, Motive to Lie of Government</u>
    <u>Witnesses.</u>**

8

9        The Government is unaware of any evidence indicating that a

10  prospective government witness is biased or prejudiced against

11  Defendant.  The Government is also unaware of any evidence that

12  prospective witnesses have a motive to falsify or distort testimony.

13  The Government is aware of, and will comply with, its obligations to

14  provide such evidence pursuant to <u>Brady v. Maryland</u>, 373 U.S. 83

15  (1963), and <u>United States v. Agurs</u>, 427 U.S. 97 (1976).

16  **13.  <u>Evidence of Criminal Investigation of Witnesses</u>**

17       The Government is unaware of any evidence indicating that a

18  prospective government witness is currently under criminal

19  investigation by the Government.

20  **14.  <u>Evidence Affecting Perception, Recollection, Ability</u>
    <u>to Communicate, or Veracity.</u>**

21

22       As addressed in items 12-14 above, the Government is unaware of

23  any evidence affecting the perception, recollection, ability to

24  communicate, or veracity of any prospective Government witness.  The

25  Government will provide such evidence pursuant to <u>Brady v. Maryland</u>,

26  373 U.S. 83 (1963), if and when it comes to light.

27  //

28  //

1
2

**15.   The Government Is Unaware of Favorable Defense Witnesses**.

3   The Government is unaware of any witness who made a favorable
4   statement concerning the Defendant, or of any statement that may be
5   favorable to Defendant's defense, which have not already been provided
6   in discovery.

7                         **16.   Jencks Act.**

8   Consistent with the Jencks Act, 18 U.S.C. § 3500, the Defendant
9   is not entitled to disclosure of witness statements prior to the
10  witness testifying on direct examination at trial.   The Government
11  must produce these statements only after the witness testifies on
12  direct examination.  United States v. Taylor, 802 F.2d 1108, 1118 (9th
13  Cir. 1986); United States v. Mills, 641 F.2d 785, 790 (9th Cir.).
14  Indeed, even material believed to be exculpatory and, therefore,
15  subject to disclosure under the Brady doctrine, if contained in a
16  witness statement subject to the Jencks Act, need not be revealed
17  until such time as the witness statement is disclosed under the Act.
18  See United States v. Bernard, 623 F.2d 551, 556 (9th Cir. 1979).

19  The Government reserves the right to withhold the statements of
20  any particular witnesses until after they testify.   However,
21  notwithstanding any statements the Government deems necessary to
22  withhold, the Government will disclose witness statements prior to
23  trial in as timely a manner as practicable, provided defense counsel
24  has complied with his obligations under Rules 12.1, 12.2, 16 and 26.2
25  of the Federal Rules of Criminal Procedure, and provided that defense
26  counsel submitted all reciprocal discovery and "reverse Jencks"
27  statements.

28  The Government will comply with its Rule 26.2 obligation to

produce for the Defendant's examination statements of witnesses in the Government's possession after, or shortly before, such witnesses testify on direct examination. The Government objects to the Defendant's request that such statements be produced at this time. Similarly, if Rule 12(i) becomes relevant pursuant to suppression proceedings, the Government will comply with obligations to produce statements in accordance with Rule 26.1.

17. **The Government Will Comply With *Giglio*.**

The Government has not made any promises, express or implied, to any government witnesses in exchange for their testimony in this case. Therefore, the Government is currently unaware of any discoverable impeachment information pursuant to Giglio v. United States, 405 U.S. 150 (1972).

18. **Agreements Between the Government and Witnesses.**

Consistent with its obligations pursuant to Giglio, stated above, the Government will provide any agreements with witnesses. To date, however, none exist.

19. **Informants and Cooperating Witnesses.**

Consistent with its acknowledged obligation to provide discovery of prospective witnesses' statements, the Government would provide the requested evidence. To date, however, the Government has not employed any informants or cooperating witnesses in the present case.

B. **GRANT LEAVE TO FILE FURTHER MOTIONS**

Although the Government does not oppose in principle Defendant's request to file further motions, the Government would oppose the filing of any further substantive motions that would not be entertained by the court until the time set aside for motions in limine. If the defendant foresees the need to file further

1  substantive motions, the Government respectfully requests that the

2  defendant request, and the Court set, a separate date for an

3  additional motion hearing, and that any motions in limine and trial

4  not be set until the conclusion of such hearing.

5      C.   **THE INDICTMENT SHOULD NOT BE DISMISSED FOR FAILURE TO ALLEGE ESSENTIAL ELEMENTS**

6

7          1.   **Introduction**

8      The indictment returned by the Grand Jury in this case sets forth

9  each of the necessary elements of a 8 U.S.C. § 1326 ("Section 1326")

10 offense.  Specifically, the indictment alleges that Defendant

11 (1) is an alien; (2) was deported from the United States; and (3) was

12 found in the United States without the permission of the Attorney

13 General.  See United States v. Parga-Rosas, 238 F.3d 1209, 1211

14 (9th Cir. 2001).  The indictment in this case sets forth each of these

15 elements, and is therefore valid.

16     The indictment provides notice of the requisite elements of the

17 offense of being found in the United States  after deportation.  "An

18 indictment is sufficient if it, first, contains the elements of the

19 offense charged and fairly informs the defendant of the charge against

20 which he must defend, and, second, enables him to plead an acquittal

21 or conviction in bar of future prosecutions for the same offense."

22 United States v. Bailey, 444 U.S. 394, 414 (1980) (quotation marks

23 omitted).

24     The Ninth Circuit has specifically held that Section 1326 is a

25 general, rather than specific, intent crime.  See United States v.

26 Ortiz-Villegas, 49 F.3d 1435, 1437 (9th Cir. 2000); United States v.

27 Ayala, 35 F.3d 423, 426 (9th Cir. 1994); Pena-Cabanillas v. United

28 States, 394 F.2d 785, 790 (9th Cir. 1968).  Again, this conclusion

1  means that no specific intent to voluntarily enter the United States
2  need be alleged in the indictment where the defendant is charged with
3  being "found in" the United States.  See United States v. Parga-Rosas,
4  238 F.3d 1209 (9th Cir. 2001).

5      In Parga-Rosas, the Ninth Circuit recognized that Section 1326
6  sets forth three separate offenses for a deported alien: to "enter,"
7  to "attempt to enter," and to be "found in."  See id., 238 F.3d at
8  1213.  As the Court noted, "we have never suggested that the crime of
9  'entry' must be charged in order to charge the crime of being 'found
10  in.'"  Id.  In short, for "found in" prosecutions under Section 1326,
11  the indictment need not allege the specific act of entry into the
12  United States.  As such, Defendant's motion to dismiss the indictment
13  should be denied.

14              **2.   The Indictment Need Not Allege Mens Rea**

15      Defendant argues that the indictment must be dismissed because
16  it fails to allege the mens rea element of the charged offense.
17  Defendant's argument is contrary to United States v. Rivera-Sillas,
18  376 F.3d 887, 891 (9th Cir. 2004), in which the Ninth Circuit rejected
19  Defendant's argument and held that a indictment charging a violation
20  of Section 1326 sufficiently charges general intent where it alleges
21  that a deported alien was subsequently found in the United States
22  without permission.  Id., 376 F.3d at 892-93.

23      Unlike attempted entry cases, Section 1326 "found in"
24  prosecutions do not require specific intent.  See United States v.
25  Ortiz-Villegas, 49 F.3d 1435, 1437 (9th Cir. 1995) (noting that intent
26  to be in the United States at the moment he or she is located is not
27  necessary); see also United States v. Ayala, 35 F.3d 423, 426 (9th
28  Cir. 1994); Pena-Cabanillas v. United States, 394 F.2d 785, 790 (9th

1  Cir. 1968).

2      In <u>Pena-Cabanillas</u>, the Court noted:

3      The statute in question is not based on any common law
       crime, but is a regulatory statute enacted to assist in the
4      control of unlawful immigration by aliens.  This offense is
       a typical *mala prohibita* offense, [footnote omitted] and
5      since it denounces the doing of an act as criminal, if a
       defendant voluntarily does the forbidden act, <u>the law</u>
6      <u>implies intent</u>. [Cite omitted.] . . . It would be absurd
       for this court to think that Congress left 'intent' out of
7      Section 1326.  <u>Since Congress used no words bearing on</u>
       <u>specific intent, such an element is not part of the statute</u>
8      <u>or of the government's burden of proof</u>.

9  394 at 788-90 (emphasis added).  Defendant's motion should therefore

10 be denied.

11     Defendant also argues that the indictment must be dismissed

12 because it fails to allege inspection and admission, or actual and

13 intentional evasion of inspection.  Again, Defendant's argument is

14 contrary to Ninth Circuit precedent.  In <u>Rivera-Sillas</u>, the Court

15 rejected Defendant's identical argument, holding unequivocally that

16 the Government need not plead and prove entry in order to convict a

17 defendant as a Deported Alien Found in the United States.  <u>Id.</u>, 376

18 F.3d at 892.

19     Defendant also claims that the indictment fails to state an

20 offense under Section 1326 because it fails to allege a voluntary

21 entry into the United States.  Again, Defendant's argument is

22 foreclosed by <u>Rivera-Sillas</u>, which definitively held that an

23 indictment alleging that the defendant is a Deported Alien Found in

24 the United States, need not allege voluntary entry.

25         **3.   <u>Salazar-Lopez Does Not Require a Different Result</u>**
               **<u>Because the Indictment Alleges Removal After</u>**
26             **<u>Relevant Conviction Date</u>**

27     Defendant points to the Ninth Circuit's recent opinion in <u>United</u>

28 <u>States v. Salazar-Lopez</u>, __ F.3d __, No. 06-50438, 2007 WL 3085906

(9th Cir. Oct. 24, 2007) as support for his argument that the indictment should be dismissed.  In <u>Salazar-Lopez</u>, the Ninth Circuit held that <u>Apprendi v. New Jersey</u>, 530 U.S. 466, 490 (2000), bars a defendant convicted under 18 U.S.C. § 1326 from having his statutory maximum sentence increased for prior convictions, unless the indictment alleges "the date of the removal, or at least the fact that Salazar-Lopez had been removed *after* his conviction." <u>Salazar-Lopez</u>, 2007 WL 3085906, at *2.  The indictment in the present case specifically alleges that Defendant was removed subsequent to October 15, 2001, the date of his prior aggravated felony conviction.

Defendant argues, nonetheless, that there is no assurance that the grand jury found probable cause regarding the allegation of his prior removal date.  Defendant provides no basis or authority for his assertion, which is undermined by the plain-reading of the indictment returned by the grand jury in the present case.  Without further support, Defendant's argument should be rejected.

### 4.    Prior Conviction Need Not Be Alleged

As Defendant concedes, the Ninth Circuit has already rejected his argument that his prior conviction must be alleged in the indictment. <u>United States v. Covian-Sandoval</u>, 462 F.3d 1090 (9th Cir. 2006). Because this court is bound by Ninth Circuit precedent, Defendant's argument should be rejected.

### D.    DEFENDANT'S STATEMENTS AND IDENTITY NEED NOT BE SUPPRESSED, AND NO HEARING IS NECESSARY

### 1.    Defendant's Statements are Admissible

Defendant contends that his statements obtained by Border Patrol agents should be suppressed due to <u>Miranda</u> violations.  As indicated above, Defendant admitted he is a citizen of Mexico without proper

documents to enter or remain in the United States.  Defendant was neither in custody, nor subjected to interrogation by Border Patrol agents at their first encounter.

A custodial interrogation is a prerequisite to the attachment of Miranda rights.  See Illinois v. Perkins, 496 U.S. 292, 297 (1990) ("It is the premise of Miranda that the danger of coercion results from the interaction of custody and official interrogation.").  To determine if a suspect is in custody, a court must assess the objective circumstances of the situation from the prospective of a reasonable person in the suspect's position.  See Berkemer v. McCarty, 468 U.S. 420, 442 (1984).

United States v. Galindo-Gallegos, 244 F.3d 728 (9th Cir. 2001) is instructive here.  In Galindo-Gallegos, Border Patrol agents stopped several aliens running near, but north of, the border between the United States and Mexico, and questioned them regarding their citizenship.  In determining whether custodial interrogation took place, the Court first noted the following:

> The material factual circumstances here are that (1) the questioning took place out of doors; (2) the location was isolated, away from view by the general public, but there were 15 or 20 aliens and only two law enforcement officials; (3) no one was handcuffed, but everyone was required to sit on the ground; (4) the questions were a necessary predicate to letting anyone go free, but were also reasonably likely to elicit incriminating admissions by those for whom the facts were incriminating; and (5) the group of aliens had been caught running in an area very near the border, and Galindo-Gallegos had persisted in running away from the border patrol but was caught and returned to the group that had been seated on the ground.

Galindo-Gallegos, 244 F.3d at 734.  Based on these facts, the court upheld the admission of the statements, without Miranda warnings, because those facts showed a sufficiently public apprehension.

Here, the apprehension of the defendant took place in a public

14                                              07CR3021-WQH

place, which is sufficient to "reduce the ability of an unscrupulous policeman to use illegitimate means to elicit self-incriminating statements and diminishes the motorist's fear that, if he does not cooperate, he will be subjected to abuse." Id. (quoting McCarty, 468 U.S. at 438). Under both Galindo-Gallegos and Berkemer, therefore, no custodial interrogation occurred.

Defendant further ignores that statements made in response to routine investigative questions and on-the-scene questions at the border are admissible. See, e.g., United States v. Leasure, 122 F.3d 837, 840 (9th Cir. 1997) (Miranda warnings not required where Customs inspector at border questioned defendant upon entry into the United States); Vickers v. Stewart, 144 F.3d 613, 615 (9th Cir. 1994) (no interrogation when prison guard pulled defendant from scene of the fire and asked what happened). Defendant was asked his citizenship status. This type of questioning is border-related and routine, and does not amount to interrogation as conceptualized in Miranda and its progeny. The statement, therefore, is admissible.

### 2. Defendant's Request for an Evidentiary Hearing Should be Denied

Defendant requests an evidentiary hearing regarding his suppression motion. Under Ninth Circuit and Southern District precedent, as well as a Southern District Local Rule, however, a defendant is entitled to an evidentiary hearing on a motion to suppress only when the defendant adduces specific facts sufficient to require the granting of defendant's motion. See United States v. Batiste, 868 F.2d 1089, 1093 (9th Cir. 1989) (where "defendant, in his motion to suppress, failed to dispute any material fact in the government's proffer, . . . . the district court was not required to

hold an evidentiary hearing"); United States v. Moran-Garcia, 783 F. Supp. 1266, 1274 (S.D. Cal. 1991) (boilerplate motion containing indefinite and unsworn allegations was insufficient to require evidentiary hearing on defendant's motion to suppress statements); Crim. L.R. 47.1. There has been no such proffer by Defendant here.

Requiring a declaration from a defendant in no way compromises defendant's constitutional rights, as declarations in support of a motion to suppress cannot be used by the government at trial over a defendant's objection. See Batiste, 868 F.2d at 1092 (proper to require declaration in support of Fourth Amendment motion to suppress); Moran-Garcia, 783 F. Supp. at 1271-74 (extending Batiste to Fifth Amendment motion to suppress). Nor is it reasonable to believe that a defendant will have less information than the Government, and so should not be required to provide proof to support a motion. See Batiste, 868 F.2d at 1092. At least in the context of motions to suppress statements, which require police misconduct incurred by Defendant while in custody, Defendant certainly should be able to provide the facts supporting the claim of misconduct. Without such a proffer, no need for an evidentiary hearing has been made.

Moreover, any argument that 18 U.S.C. § 3501 requires an evidentiary hearing in every case is of no merit. Section 3501 requires only that the Court make a pretrial determination of voluntariness "out of the presence of the jury." Nothing in section 3501 betrays any Congressional intent to alter the longstanding rule vesting the form of proof on matters for the court in the discretion of the court. See Batiste, 868 F.2d at 1092 ("Whether an evidentiary hearing is appropriate rests in the reasoned discretion of the

1   district court.") (citation and quotation marks omitted). Therefore,
2   no evidentiary hearing is warranted in this case.

3       The Ninth Circuit has expressly stated that a government proffer
4   based on the statement of facts attached to the complaint is alone
5   adequate to defeat a motion to suppress where the defense fails to
6   adduce specific and material facts. <u>See Batiste</u>, 868 F.2d at 1092.
7   As Defendant has failed to provide a declaration alleging specific and
8   material facts, the Court would be within its discretion to deny
9   Defendant's motion based solely on the statement of facts attached to
10  the complaint in this case, without any further showing by the
11  Government.

12                              **III.**

13                          **CONCLUSION**

14      Based on the foregoing, the Court should deny Defendant's motion
15  for further discovery, grant Defendant's motion for leave to file
16  further motions, deny Defendant's motion to dismiss the indictment,
17  and deny his motion to suppress statements.

18      DATED: February 4, 2008

19                                  Respectfully submitted,

20                                  KAREN P. HEWITT
                                    United States Attorney
21
                                    *s/ Christopher P. Tenorio*
22                                  CHRISTOPHER P. TENORIO
                                    Assistant U.S. Attorney
23

24

25

26

27

28

1

2

3                          UNITED STATES DISTRICT COURT

4                        SOUTHERN DISTRICT OF CALIFORNIA

5   UNITED STATES OF AMERICA,      )  Criminal Case No.  07CR3021-WQH
                                   )
6                Plaintiff,        )      **CERTIFICATE OF SERVICE**
                                   )
7       v.                         )
                                   )
8   PEDRO CRUZ-TERCERO,            )
                                   )
9                Defendant.        )
    ───────────────────────────────)

10

11  IT IS HEREBY CERTIFIED that:

12      I, CHRISTOPHER P. TENORIO, am a citizen of the United States and

13  am at least eighteen years of age.  My business address is 880 Front

14  Street, Room 6293, San Diego, California 92101-8893.

15      I am not a party to the above-entitled action.  I have caused

16  service of **GOVERNMENT'S RESPONSE AND OPPOSITION TO DEFENDANT'S MOTIONS**

17  on the following party by electronically filing the foregoing with the

18  Clerk of the District Court using its ECF System, which electronically

19  notifies them:

20      **Daniel Casillas, Esq.**

21      I declare under penalty of perjury that the foregoing is true and

22  correct.

23  Executed on February 4, 2008

24                                  Respectfully submitted,

25                                  KAREN P. HEWITT
                                    United States Attorney
26
                                    _s/Christopher P. Tenorio_
27                                  CHRISTOPHER P. TENORIO
                                    Assistant U.S. Attorney
28

                                                          07CR3021-WQH